SEMANTHA WALRATH V. ROYAL INSURANCE CO.

1. NOT ALWAYS NECESSARY TO REFOM AMBIGUOUS CONTRACT IN EQUITY BEFORE SUIT AT LAW CAN BE MAINTAINED.

It is not always necessary to stand upon the strict letter of a contract with an insurance company; and where there is some doubt and ambiguity in its construction, to go into a court of equity ask for a reformation of the contract before an action can be maintained.

2. ORAL TESTIMONY MAY BE ADMITTED TO EXPLAIN MEANING OF CONTRACT.

The language of a policy cannot be changde by parol evidence but parol or verbal testimony is admissible to aid the court or jury in ascertaining in what sense certain words were actually used.

ERROR to the Court of Common Pleas of Licking county.

SMYSER, J.

The case of Samantha Walrath v. The Royal Insurance Company is here on error, and but a single question is presented to this court.

The plaintiff in error commenced an action before a justice of the peace for the recovery of fifty dollars for loss by fire claimed to have covered by a policy of insurance issued by the defendant to her. The case went on appeal to the court of common pleas. A petition was field there and the policy attached to the petition. A petition is in the ordinary form, and asks a judgment for fifty dollars. The cause was tried; once before this court, and reversed. A second amended petition was filed in the court below. To this second amended petition a general demurrer was interposed and sustained by the court. The plaintiff not desiring to plead further, brings the action of the court in sustaining that demurrrer here for review. The question is whether this amended petition constitutes a cause of action.

I will read the petition, omitting the formal parts:

" Plaintiff says that prior and up to the twenty-first day of July, 1890, she held a policy of fire insurance from said defendant on her dwelling house and certain personal property, located in Hanover township, being in range 10, section 2, in Licking county, Ohio, and which policy was deposited by said defendant with the Homestead Building Association, of Newark, Ohio, for the reason that said association had an interest in said real estate by mortgage.

" That prior to the expiration of said old policy, the said defendant by its agent, J. P. Murphy, while standing in the road in said village, township, section and range, and in full view of said real estate aforesaid, solicited said plaintiff to take out additional insurance on said property, as she had made some improvements thereon. That said agent was then and there, as well as said defendant, well acquainted with said property, its location and kind, so insured in said old policy.

"That at and prior to said twenty-first day of July, 1890, the said plaintiff was the owner of ten ton of hay, which was then stored in the barn of one Dr. Bukey, in said township, section, and range, and of which barn she was then and there the owner of a lease for years. That on said

day, while so standing on the road in said township, section and range, in addition to soliciting her to take out such additional assurance on the property mentioned in the old policy, as aforesaid, he solicited her to take out some insurance upon said ten ton of hay, in said barn, which was located as aforesaid, said barn being then and there close by and in full view of said agent; and promising that the old policy should be canceled, a new policy issued, covering said additional insurance, and covering said hay, and that the unearned portion of the premium on the old policy be applied upon the premium on said new policy, and that she should have until September 15, 1890, to pay the balance of said premium. That then and there the said plaintiff notified said company through said agent, that she did own the said ten ton of hay which was then and there stored and located in said barn of Bukey, and that she had the said barn leased, and that she neither owned nor possessed any other hay whatever. That said barn was then and there pointed out to the said agent, and said agent invited to go to said barn and see said hay, and which was but two or three hundred feet distant; but said agent refused to do so, saying that it was unnecessary.

"That said defendant through said agent, was then and there informed that the said barn was owned by said Bukey, and that said plaintiff had simply a lease of the same. That said agent thereupon informed and notified her that he would put the said hay in said new policy, insuring it for the sum of fifty dollars, and he then and there agreed with her that he would at once make out the policy so that the said hay would be insured, and issue the same as soon as he got back to his office at Newark, Ohio, and deposited it with the said Building Association under the same arrangement as existed with the old policy as aforesaid, on account of the mortgage which the association held on said real estate, and said plaintiff never saw said policy until after said hay was destroyed by fire. That said Bukey barn was situated more than 500 feet from the real estate of said plaintiff so as aforesaid mentioned as being insured in the old policy, and said defendant was well acquainted with the said difference in said locations.

"That the said defendant well knew at the time it solicited said plaintiff to insure said hay, and at the time it issued its said policy of insurance, that the said plaintiff did own said ten ton of hay, and owned no other hay whatever, nor was in the possession of any other hay; that the said hay was so stored in the barn of said Bukey, who was the owner, and that she was in the possession of said barn under a lease from said Bukey. That said defendant well knew at said times exactly where said barn and hay were located.

'That the said agent then went back to his office in Newark, Ohio, and issued the policy, a copy of which, marked "A," is attached to the original petition, bearing date July 21, 1890, in consideration of the premium paid by the plaintiff of $13.50; taking up the old policy, and applying the unearned premium thereon, to the payment of the premium on said new policy, and deposited it with the Building Association, aforesaid. And plaintiff says that she has duly kept, observed and performed all the requirements and conditions contained in said policy, by her to be kept and performed.

"That on the eleventh day of September, 1890, said hay was totally destroyed by fire, of all which the said defendant had due and proper notice.

"Plaintiff further says that by said policy of insurance the said

defendant did then and there insure the said plaintiff, among other things, against loss or damage by fire, to the amount of $50, on said hay. That she was the owner of said hay, and continued to be the owner of the same up to the time the said hay was so destroyed by fire."

The petition then goes on to set out the real value of the hay destroyed at $70.

The policy is as follows:

"In consideration of the representations, conditions and warranties hereinafter mentioned or referred to, and the receipt of thirteen and 50—100 dollars, do agree to indemnify Samantha Walrath (hereinafter called the assured) against all such immediate loss or damage as shall happen by fire to the following specified property.

"On the following described property, situated on No. sec. No.—, township 2, No. range 10, county of Licking and state of Ohio, on side of —Road."

Then follows: "On slate roof, frame dwelling house No. 1."

The next provision is: "On household furniture while contained in dwelling No. 1." "House No. 2, including foundation and cellar walls;" left blank. "On shingle roof frame barn No. ." "On horses and mules, not exceeding $100, on any one head, against loss by fire or lightning, while in barns or on farm of assured, and against lightning while at large or in use. On live stock while in barns or on farm of assured." "On grain, in stacks, granary, barns and cribs, on farm, not exceeding $25 on any one stack."

"On hay in barns or stacks, on cultivated ground only, on farm, not exceeding $25, on any one stack, $50."

As I said, there is a general demurrer interposed to this petition, on the ground that it does not state facts sufficient. A majority of the court have reached a conclusion that is satisfactory to the majority. Judge Adams, however, dissents. Speaking for myself, I think this original petition was good; but that is not the question. That is not before us.

What is recited in that petition? That this company agreed to insure, and did insure, among other things, ten ton of hay belonging to Mrs. Walrath, in the township of Hanover, in the county. That that amount of hay was insured by this policy. That it was lost by fire, and that she performed all the conditions of her required. It has been urged here that a fair construction of the provision which I have read from the policy means that the hay must be on her farm. The language of the policy does not say "on her farm." There is a difference in the use of language from the preceding insurance on stock. There the words are used: "On the farm of assured." But, in this case the words "of assured" are omitted.

It is urged in support of this demurrer, that if this policy does not express what was actually intended by the parties, before the plaintiff can have relief in an action at law, she must go into a court of equity and reform the policy so as to express the contract between the parties, and then resort to law for redress for this loss. And it is said that the matter contained and recited in this second and amended petition is evidence, and that, being evidence, it would not be proper to offer it upon the trial, because it would tend to contradict the written instrument, or vary it by parol.

It may possibly be evidence, but it may be of that character of evidence that is sometimes plead to constitute a cause of action. We suspect that the way this happened to arise was because when pay was

demanded for this loss, this insurance company said: We didn't insure any hay for you any other place than on your farm and this hay being admittedly not on her farm, in the sense that she owned it, she could not recover; and that it was not included in this policy. It is anticipating and meeting that very defense that this second amended petition is drawn.

We think the Ohio case of Harris v. Ins. Co , 1 C. S. C. R. 361, is fairly decisive of this question, decision by Judge Taft. That case was contested by eminent counsel. For the plaintiff were Cox, Burnett & Follett and Geo. E. Pugh. For the defendant Insurance Company, Hoadly & Johnson. "The suit was for a loss, under a policy of insurance, upon certain merchandise, machinery, tools, and fixtures. There is no dispute about the loss or the amount of the loss; but the question is, whether the policy included the property lost. It consisted of tobacco situated in the fifth story of a building on Main street, which was used by the plaintiff in connection with a five-story brick building fronting on Hammond street, the connection being by wooden bridges across an area.

"The policy insured C. W. Roback against loss or damage by fire, to the amount of $5,000, for the term of one year, on his merchandise, hazardous or not hazardous, and his machinery, tools, and fixtures, contained in the five-story brick building occupied by him as a tobacco factory and ware-house, Nos. 19 and 21, situated on the west side of Hammond street, between Third and Fourth streets, in Cincinnati, Ohio. The above premises heated by a furnace in the cellar and connected with the building by wooden bridges from the upper story.

"The above premises are occupied as a tobacco factory.

"The answer denies that the defendant insured any property of the plaintiff at any other place than at Nos. 19 and 21, on the west side of Hammond street, and denies any loss of property insured by the defendant.

"The plaintiff proposes to prove, and it was admitted that it could be proved, that when the policy of insurance was obtained, the tobacco in the fifth story of the Main street building was shown to the agent of the defendant as part of the subject of insurance, and that a surveyor on behalf of the defendant examined it all, including that in the fifth story of the building on Main street, which was occupied as part of the factory and ware-house by the insured, and that the said fifth story was used entirely and exclusively in connection with the said five-story building as a part of said factory and ware-house.

" The judge, at special term, ruled out the evidence as inconsistent with the written description in the policy, and instructed the jury that the plaintiff was not entitled to recover for the loss; to which the plaintiff excepted.

"The question is whether the merchandise in the fifth story of the Main street building was covered by the policy under the circumstances, and whether this evidence was competent.

" The language cannot be changed by parol evidence; but by parol or verbal testimony the jury or the court may be aided in ascertaining in what sense the words were actually used.

" It is obvious that this property, in the fifth story of the Main street building, would not be held to be necessarily included in the description as part of the merchandise, machinery, and tools in the five-story building without the aid of parol proof to explain its connection with it. Nor

Walrath v. Insurance Co.

do we think that the language of the description necessarily excludes property in a room opening into or connected with the five-story brick building, as this is shown to have been. The consequence is that we think that the evidence was competent. This is one of the cases in which a written contract, which is to be construed in the light of the circumstances appearing in evidence, may be construed even by the jury, under the direction of the court.

"Upon the whole, we think that a man knowing the facts as they existed at the time to which we have referred, and reading the policy in the light of them, would naturally include the tobacco in the fifth story of the Main street building as part of the insured premises. If such would be the case, we do not think it necessary that the plaintiff should be put to the risk of losing his insurance by failing to show a mutual mistake in a suit for a reformation of the contract. If it may be made so as to include the tobacco as it stands, and if the circumstances under which the contract was made require us so to read it, we think they may be shown by parol evidence."

There is a case in 13 Wallace, 617, Union Mutual Life Ins. Co. of Maine v. Wilkinson. To show just what the exact question was, I call attention to the brief of counsel:

"The question to be discussed is: Had the court and jury, under any pretense whatever, any right to take into evidence the parol statements made by the applicant or others, which were contemporaneous with the signing of the application?"

Let it be observed that by the terms of both instruments, the application was a part of the policy.

Both instruments, taken together, constituted one contract.

The plaintiff sues on that contract as it stands.

It had not been reformed in equity, but stood, on the day of trial, just as the respective parties had signed it.

We have then, this anomalous position in a court of law:

The plaintiff sues on a written contract, signed by himself, as one of the parties; he asks a recovery according to the terms of that contract; and yet, in the same breath, is permitted by the court to contradict and vary the terms of this written contract, by proving what was stated by himself and others, at and before the signing of the same.

One of the questions was that she had answered that she had never suffered any material injury, and Justice Miller disposed of that question first; but in the disposition of it on page 622, it appears that the beneficiary was young and did not make that answer. Just as in the case at bar,—Mrs. Walrath had no more to do with the language in which she expected to have her hay insured than any member of this court. That she left it entirely to the company.

"But that there was present, at the time the agent was taking the application, an old woman who said she had knowledge on that subject, and that the agent questioned her for himself, and from what she told him he filled in the answer which is now alleged to be untrue, without its truth being affirmed or assented to by plaintiff or the wife.

"The jury found specially.

"And on this subject the court instructed the jury, that if the applicant did not know at what age her mother died, and did not state it, and declined to state it, and that her age was inserted by the agent upon statement made to him by others, in answer to inquiries he made of them, and upon the strength of his own judgment based upon data thus

obtained, it was no defense to the action to show that the agent was mistaken, and that the mother died at the age of twenty-three years.

"To the introduction of the oral testimony regarding the action of the agent, and to the instructions of the court upon that subject, the defendant excepted and assigns the ruling of the court as error on the ground that it permitted the written contract to be contradicted and varied by parol testimony.

"The great value of the rule of evidence here invoked can not be easily overestimated. As a means of protecting those who are honest, accurate and prudent in making their contracts, against fraud and false swearing, against carelessness and inaccuracy, by furnishing evidence of what was intended by parties, which can always be produced without fear of change or liability of misconstruction, the rule merits the eulogies it has received. But experience has shown that in reference to these very matters the rule is not perfect. The written instrument does not always represent the intention of both parties."

And yet that is hardly the case in the case at bar. This demurrer concedes the truth of the facts plead here. There is no contention but what this woman was to have insured ten ton of hay, and as she says she had but ten ton in Hanover Township, and that that was in the barn of Dr. Bukey.

The written instrument does not always represent the intention of both parties, and sometimes it fails to do so as to either, and where this has been the result of accident of mistake or fraud, the principle has been long recognized that under proper circumstances, and in an appropriate proceeding, the instrument may be set aside or reformed, as best suits the purposes of justice.

In the case before us, a paper is offered in evidence against the plaintiff containing a representation concerning a matter material to the contract on which the suit is brought, and it is not denied that he signed the instrument, and that the representation is untrue. But the parol testimony makes it clear beyond a question, that this party did not intend to make that representation when he signed the paper, and did not know he was doing so, and, in fact, had refused to make any statement on that subject. If the writing containing this representation had been prepared and signed by the plaintiff in his application for a policy of insurance on the life of his wife, and if the representation complained of had been inserted by himself, or by some one who was his agent alone in the matter, and forwarded to the principal office of the defendant corporation, and acted upon as true, by the officers of the company, a different question would arise.

If, however, we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations, and was told by the plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement, would be an act of bad faith and of the grossest injustice and dishonesty.

"It is precisely for such cases as this that courts of law in modern times have introduced the doctrine of equitable estoppels, or as it is sometimes called, estoppels in pays. The principle is, that where one

Walrath v. Insurance Co.

party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage."

Then the court discusses how insurance is obtained. That the time has gone by when people seek out the insurance companies for their insurance, but the insurance companies seek out the people.

The court concludes:

"The modern decisions fully sustain this proposition, and they seem to us founded in reason and justice, and meet our entire approval. This principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it."

In the case at bar, the petition recites what the contract was. She was to have insurance on ten ton of hay. She pointed it out. And, anticipating a defense that might be made that, under the provision in the policy, this hay was not included in its terms, the pleader has seen fit to set out what would estop this company from making the defense that this hay was not included within the terms of this policy. The authorities are numerous that where there is mere misdescription or anything like that, it does not avail. There is a case in 49 Northwestern Rep., 333, where a party was sued on a promissory note, and there was a misdescription. He came in and said, by way of defense, that the policy was void for the reason that there was a misdescription, and that therefore he ought not to pay the note. The court said that is no defense—the mere fact that there is a misdescription—you understand what property was to be insured. This insurance company understands what property was insured, and merely because there happens to be a misdescription, does not invalidate the policy, and does not relieve you from your obligation to pay the premium; nor, in case of loss, would it relieve the insurance company from paying whatever the loss might be.

There are some Ohio authorities. Ohio Farmers' Ins. Co. v. Britton, 31 O. S., 488. Britton died, leaving ten children, some of them of age; some minors, and a widow. The widow's dower had never been assigned. She and some of the elder children put up a new house on the premises, and she took out some insurance, $1,600, on the dwelling and $600, on the contents, the policy being issued to "N. B. Britton's heirs." A loss occurred, and the company answered, as their chief defense: "That the dower interest of Mrs. Britton in the premises constituted an incumbrance upon the property insured, and, therefore, that policy was void.". In deciding this case, Judge Boynton says:

"Let it be referred to either, and the representation that the property was not incumbered was strictly true, and being true, its effect is not to be destroyed or varied by the circumstance that the policy was issued to the heirs alone. The issuing of the policy to the heirs instead of the widow and heirs was the act of the company. It nowhere appears to have been done in pursuance of any direction given to the company by

one interested in the property, nor upon any statement, oral or written, that Mrs. Britton was acting exclusively for them."

So, in this case, it was not the act of this woman. It was the act of the company.

West v. Citizens' Ins. Co., 27 O. S., 1, is a case where a policy had been issued to West & Co., a partnership. West sells out; a loss occurs, and suit is brought by the remaining partners, and it was contended in that case that there could be no recovery. I read, on page 7, from the decision by Justice Johnson:

"It will be observed that this policy (which is part of the record) is a contract with a partnership, and not with the individuals composing it; that, as such partners, they owned the stock of goods, and were doing business there within the usual way."

I desire to call attention to the construction that this insurance policy should receive:

"The policy should receive a reasonable interpretation. Its intent and substance should be ascertained from the language employed. Its stipulations should have full legal effect, to guard the insurer against fraud and imposture. As it is a contract of indemnity to the insured, it should be liberally construed in his favor, not only because this mode of construction is most conductive to trade and business, but because it is probably most consonant with the intentions of the parties. There is no more reason for a strict compliance with its terms than ordinary contracts. There is nothing in such a contract intrinsically more sacred or inviolable than a contract about any other subject. 25 Wend., 374. Exceptions in a policy should be strictly construed, and when there are two interpretations equally fair, that which gives the greater indemnity should prevail."

None of these rules is more fully established or more imperative and controlling than that which declares that it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which, in making his insurance, it was his object to secure.

The court reaches the conclusion that although there had been a change in this partnership, that one partner had sold out and the contract of insurance was with the partnership, that it was not such an alienation of the property as would defeat a recovery in the case of loss. The court says:

"We are aware that the conclusions we have reached are at variance with the greater number of reported cases, but we believe these conclusions rest on the firmer and more satisfactory ground of sound principles, and that they are more conducive to substantial justice—the aim and end of all law."

So there is a gradual breaking away from the old doctrine that, with an insurance company, you must stand upon the strict letter of the contract, and if perchance, there may be some doubt or ambiguity in its construction, a recovery can be defeated until a party goes into a court of equity and asks for a reformation of the contract, to express the contract as it was intended by the parties. Wherever it appears that that might be done, might be used to defeat a recovery by the company, the plaintiff may anticipate, and may plead by way of estoppel.

We have a case in our court in our county, where the question arose upon a limitation clause providing that an action was not to be maintained unless suit was brought within one year after the loss. Suit was

not brought until fifteen months after the loss; but in stating the cause of action, to avoid being driven out of court on demurrer, the plaintiff alleged that that provision in the policy was waived. This company issuing this policy, and this woman having nothing to do with it, we think the company ought to be bound; and we think it is only fair to anticipate what is alleged here. This language in the policy is not her own. She did not put it here. She did not see it. It was part of the arrangement that she was not to see it. It was to be delivered directly to this building and loan association.

We think this demurrer was improperly overruled, and for that reason this judgment is reversed and cause remanded.

Judge Adams dissents.

*S. M. Hunter*, on behalf of plaintiff.

*Follett & Follett*, on behalf of defendant.